Filed 7/13/15  In re D.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re D.L., a Person Coming Under the Juvenile Court Law. | D067300 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12947) |
| v. | |
| M.L., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.


Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego and Susan Lake for D.L., a Minor.

M.L. appeals an order denying her petition under Welfare and Institutions Code section 388[1] in the juvenile dependency case of her minor son, D.L.  M.L.'s section 388 petition, filed the day before D.L.'s selection and implementation hearing under section 366.26, sought an order returning D.L. to her care or, in the alternative, renewed family reunification services.  M.L. contends the court abused its discretion by denying her motion for a continuance of the hearing on her petition and by denying her petition on the merits.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 2013, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of newborn D.L.  The Agency alleged that M.L. had a history of methamphetamine abuse and had used methamphetamines during her pregnancy with D.L.  The Agency further alleged that M.L.'s boyfriend, alleged father Daniel S., was aware of M.L.'s drug use and did not stop her.[2]  The Agency concluded that D.L. had suffered, or was at substantial risk of suffering, serious physical harm or illness as a result of his parents' failure to protect D.L. or provide for his care.

---

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    Subsequent paternity testing revealed that Daniel was not D.L.'s biological father. The court entered a judgment of nonparentage and struck Daniel's name from the petition.

At D.L.'s detention hearing, the court found the Agency had made a prima facie showing under section 300, subdivision (b), and ordered that D.L. be detained in out-of-home care.  The court later sustained the allegations of the petition, removed D.L. from M.L.'s custody, and ordered reunification services for M.L.  M.L.'s case plan included substance abuse treatment, parenting education, individual therapy, and domestic violence classes.  Her domestic violence classes were intended to address physically abusive behavior that M.L. exhibited toward Daniel.  D.L. was placed in foster care.

In advance of the six-month review hearing, the Agency recommended that the court terminate M.L.'s services and schedule a selection and implementation hearing under section 366.26.  While M.L. initially participated in drug treatment and other services, she relapsed into drug use after approximately four months.  M.L. admitted attending drug treatment classes while under the influence of drugs and tested positive for methamphetamines.  M.L. stopped attending her drug treatment classes.  She also failed to complete parenting or domestic violence classes.  Despite multiple referrals, she did not participate in any individual counseling.  Before the six-month review hearing, M.L. entered an inpatient drug treatment program.

M.L.'s supervised visitation with D.L. also deteriorated.  M.L. began to miss visits for several weeks at a time.  M.L. did not call to check on D.L. or attempt to reschedule her missed visits.  D.L.'s foster mother reported that M.L. smelled strongly of alcohol during one visit.  During the visits she did attend, M.L. was uncertain how to parent D.L.  M.L. was not comfortable holding or soothing D.L.

3

At the six-month review hearing, the court found that M.L. had not made substantive progress in her case plan and there was not a substantial probability that D.L. would be returned to M.L.'s care in the next six months. The court therefore terminated M.L.'s services and scheduled a selection and implementation hearing under section 366.26.

The Agency recommended a permanent plan of adoption. D.L. did not have any significant health, developmental, or behavioral issues. D.L.'s foster parents wanted to adopt him, and a number of other families in San Diego County were interested in adopting a child with D.L.'s characteristics. The Agency social worker responsible for D.L. did not believe any exception to adoption existed.

In part because of a 60-day continuance requested by the Agency, D.L.'s selection and implementation hearing was not held until almost seven months after the six-month review hearing. The day before the selection and implementation hearing, M.L. filed a petition under section 388. The petition sought modification of the court's order terminating reunification services and scheduling the selection and implementation hearing. M.L. alleged that she had completed her inpatient drug treatment program and a parenting class, met regularly with a counselor, and had positive visits with D.L. M.L. requested that the court return D.L. to her care or, in the alternative, order renewed reunification services. M.L. stated D.L.'s interests would be served by the request because M.L. was bonded to D.L. and because D.L. would have the opportunity to grow up in the care of his biological mother.

4

At the selection and implementation hearing, the court determined that M.L. had made a sufficient prima facie showing to grant an evidentiary hearing on her petition. M.L.'s counsel requested a continuance in order to subpoena M.L.'s substance abuse counselor. M.L.'s counsel explained that the counselor "would have significant testimony that the court would want to consider as to the changes that have been observed [in] the mother . . . ." The Agency and D.L.'s counsel opposed the request for continuance. The court remarked on the challenges facing all of the attorneys involved in the situation. The court then denied the request because, given the timing of the petition, "we would have expected to hear evidence" on M.L.'s petition that day if an evidentiary hearing was granted.

M.L. testified in support of her petition. M.L. said that she used methamphetamines for five or six years but that she had not used for approximately 10 months. M.L. explained that she had completed seven months of drug treatment at an inpatient residential program. In her fourth month, she was selected as a "sergeant-at-arms" for the program, a position that provided her more responsibility. M.L. testified that she completed a parenting education program while in treatment and attended weekly individual counseling sessions. M.L. graduated from the drug treatment program approximately two months before the hearing. M.L. had not participated in any further drug treatment efforts since that time, but she denied any further drug use.

Since graduation, M.L. had lived in her mother's garage. She was unemployed but hoped to get a job through her sister. M.L. admitted that, given her living situation, D.L. could not be returned to her care immediately. M.L. participated in weekly visits with

5

D.L., and she felt they were growing closer and closer. Daniel drove M.L. to her visits with D.L. and other appointments. M.L. testified she was no longer in a relationship with Daniel, but they remained friends. M.L. believed domestic violence would no longer be a problem for her since she had stopped using drugs.

Visitation reports show that M.L.'s visits with D.L. were loving and appropriate. M.L. participated in seven visits since graduation and had missed only one visit (due to illness). M.L. testified that she tried to set up visitation while in drug treatment but had difficulty contacting the Agency. An Agency social worker reported that she had trouble contacting M.L. and M.L. did not return her calls.

At the hearing, the Agency social worker opined that it would not be safe to return D.L. to M.L.'s care, even if M.L.'s testimony were true. The social worker was concerned that M.L. had not engaged in any drug treatment services such as Narcotics Anonymous following her inpatient program. The social worker believed M.L.'s period of sobriety was too short to know whether it would continue given the length of M.L.'s addiction. M.L. also had not shown she could maintain sobriety outside of the inpatient treatment context. The social worker did not believe it was in D.L.'s best interests for M.L. to receive additional services because it would delay stability for D.L.

The social worker believed that D.L. did not recognize M.L. as his biological mother. D.L. did not treat M.L. any different from other familiar individuals, such as the social worker or the visitation monitor. D.L. did not have a bond with M.L.; instead, he was bonded to his caregiver. The social worker believed it would be detrimental to remove D.L. from the care of his foster family, who had cared for him his entire life.

6

The juvenile court denied M.L.'s petition.  The court found that M.L. had not shown either changed circumstances justifying the modification of its prior order or that M.L.'s requested modification would be in D.L.'s best interests.  Regarding D.L.'s best interests, the court expressed its concern that M.L.'s sobriety was untested, that she had no stable employment or living arrangements and that her domestic violence issues remained untreated.  By contrast, D.L.'s caregivers had demonstrated their commitment to D.L.'s care and stability.

The court proceeded to the selection and implementation hearing.  After further argument, the court found that D.L. was adoptable and no exception to adoption applied.  The court terminated M.L.'s parental rights over D.L. and referred D.L. to the Agency for adoptive placement.  M.L. appeals.

DISCUSSION

I

M.L. first challenges the court's order denying her request for a continuance of the evidentiary hearing on her section 388 petition.  Section 352, which governs continuances of hearings in juvenile dependency cases, provides in part as follows:  "Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor.  In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary

7

placements. [¶] Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a).)

"Continuances are discouraged in dependency cases." (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.) " '[T]ime is of the essence in offering permanent planning for dependent children.' [Citation.] A reviewing court will reverse an order denying a continuance only upon a showing of an abuse of discretion." (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187.)

M.L. has not shown the court abused its discretion under the circumstances here. M.L. requested the continuance in order to allow time for her to subpoena a counselor from her inpatient drug treatment program to provide testimony in support of her section 388 petition. M.L., however, did not file her petition until one day before the scheduled selection and implementation hearing. Given that schedule, the court noted that M.L. should have expected that the evidentiary hearing on her petition would proceed the same day as the scheduled hearing.[3] M.L. could have had her counselor available to testify

---

[3]     M.L. interprets the court's statements during the hearing as expressing an expectation that the court would have heard testimony from M.L.'s counselor during the evidentiary hearing on M.L.'s section 388 petition. We disagree. In ruling on the request for a continuance, the court stated as follows: "The world of lawyering is full of issues and challenges and pitfalls and that sort of thing, and I truly recognize that. So from a lawyer's standpoint -- I won't say which lawyer my heart [goes] out to. My heart can go out to a lawyer in this situation -- but my empathy with that situation can't override what we need to do here today. [¶] So, yes, with the 388 pending and the chance of it -- at least the prima facie part of it being granted, *we would have expected to hear evidence on that today*, and so respectfully I'm going to deny that motion for a continuance. We'll hear it on the merits." (Italics added.) It is clear from context that the court is

8

then. (Alternatively, since M.L. had graduated from her treatment program two months beforehand, M.L. could have filed her petition and sought a hearing much earlier.) Based on this timing, the court was correctly skeptical of M.L.'s continuance request.

M.L. did not provide an offer of proof regarding the counselor's expected testimony. Nor did M.L. provide any detailed description of the counselor's testimony, except that it would be "significant" and describe the "changes" M.L. had undergone. Given this limited showing, we cannot conclude the court abused its discretion by denying M.L.'s request to continue the hearing in order to provide M.L. an opportunity to subpoena her counselor. At most, the counselor would be able to discuss M.L.'s progress while in inpatient treatment. This testimony would be largely duplicative of the testimony M.L. herself could give. We disagree that the mere fact the counselor would provide an independent perspective constitutes sufficient grounds to find the counselor's testimony so important as to require a continuance. Additionally, there is no evidence the counselor would have been able to provide testimony about M.L.'s progress in the two months after M.L.'s inpatient treatment program ended.

The statute requires that a continuance must not be granted if it is contrary to the interest of the minor. (§ 352, subd. (a).) "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Ibid.*) Given the late filing of M.L.'s section 388

referencing the section 388 petition, not the counselor's testimony specifically, when the court states "we would have expected to hear evidence on that today."

9

petition, and the lack of any showing that the counselor's testimony was necessary to resolve it, it was reasonable for the court to determine that a further continuance would be contrary to D.L.'s interests because it would further delay permanency in his custody and placement. The court did not abuse its discretion in denying M.L.'s request for a continuance.

## II

M.L. also contends the court erred in denying her petition under section 388 on its merits. "Section 388 states in pertinent part that a parent may 'upon grounds of change in circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.' (§ 388, subd. (a).) The juvenile court may modify an order if a parent shows, by a preponderance of the evidence, changed circumstances or new evidence and that the modification would promote the best interests of the child." (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446 (*Aaliyah R.*).)

"Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion. [Citation.] 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*In re J.C.* (2014) 226 Cal.App.4th 503, 525-526.) An appellant faces a difficult task meeting this standard. "The denial of a section 388 motion rarely

merits reversal as an abuse of discretion." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

M.L. claims her graduation from inpatient drug treatment services, her completion of parenting classes and individual therapy, and her continued sobriety constitute changed circumstances. However, M.L. admitted during her testimony that she was not ready to care for D.L. M.L. also had not engaged in any drug treatment programs in the two months following her graduation from her inpatient program. We are therefore skeptical that M.L. has shown changed, rather than simply changing, circumstances. "A petition that alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.] ' "Childhood does not wait for the parent to become adequate." ' " (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

Even assuming M.L. had shown some changed circumstances, she has not shown that her requested relief, returning D.L. to her care or reinstituting reunification services, was in D.L.'s best interests. "In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity. [Citation.] 'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).)

11

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Stephanie M., supra*, 7 Cal.4th at p. 317.) Where, as here, the permanent plan is adoption, the presumption in favor of continued foster care "applies with even greater strength . . . ." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464 (*Angel B.*).)

"[W]hen a child has been placed in foster care because of parental neglect or incapacity, after an extended period of foster care, it is within the court's discretion to decide that a child's interest in stability has come to outweigh the natural parent's interest in the care, custody and companionship of the child." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419 (*Jasmon O.*).)

The circumstances here conform to the general rule in *Jasmon O.* D.L. had been in the care of his foster family for 14 months by the time of M.L.'s petition. Aside from D.L.'s time in the hospital shortly after birth, his foster family was the only one he had ever known. D.L. had never been in M.L.'s care. M.L.'s visitation was also inconsistent, with no visits occurring for approximately five months after M.L.'s relapse and subsequent drug treatment. During later visits, D.L. did not treat M.L. any differently than the Agency social worker or the visitation monitor. Although M.L. testified she felt

12

a bond with D.L., it is reasonable to conclude based on the entire record that D.L. did not in fact have a bond with M.L.  It was therefore "within the court's discretion to decide that a child's interest in stability has come to outweigh the natural parent's interest in the care, custody and companionship of the child."  (*Jasmon O., supra*, 8 Cal.4th at p. 419.)

D.L.'s foster family wanted to adopt him, which the juvenile court recognized would offer D.L. a stable and permanent family.  By contrast, M.L. admitted she could not care for D.L. at the time of her petition.  Renewing reunification services would delay permanency for D.L. and offer only the prospect that M.L. could reunify with him.  The court's concern that this prospect was unlikely was reasonable, given M.L.'s untested sobriety, her lack of stable employment or housing, and her untreated domestic violence issues.  While D.L. has some interest in being brought up by his biological mother and having a connection to her family, it was reasonable for the court to determine that delaying permanency for D.L. to offer the chance at reunification was not in D.L.'s best interests under the circumstances of this case.  (See *In re Edward H.* (1996) 43 Cal.App.4th 584, 594.)  Because M.L. was required to establish both changed circumstances and best interests, the juvenile court did not abuse its discretion in denying M.L.'s petition.  (See *Aaliyah R., supra*, 136 Cal.App.4th at p. 446.)

M.L. emphasizes her progress in treating her drug addiction.  (See *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532 [identifying as a factor in the best interests analysis the degree to which the problem that led to the dependency case has been removed or ameliorated].)  But that fact—as well as the other positive changes M.L. alleges—is just one among many to consider in assessing the best interests of the child.  (See *id.* at

13

p. 530.) Weighing that factor against others is a matter properly entrusted to the juvenile court. Considering all of the circumstances, including M.L.'s progress, the court did not abuse its discretion in denying M.L.'s petition.[4]

In *Angel B.*, for example, a parent's petition alleged that "she has remained sober, completed various classes, obtained employment, and visited regularly" with the minor. (*Angel B., supra*, 97 Cal.App.4th at p. 464.) Nonetheless, the court determined that the parent had not made a factual showing of the minor's best interests sufficient to merit even a hearing on her petition: "Mother has not made such a showing, and it is difficult to imagine how she could have done so, given the fact that Mother never actually parented [the minor] before her removal, and [the minor] was immediately placed with an adoptive family and her own sibling." (*Id.* at p. 465.) The court further explained, "[A]lthough

---

[4]     M.L. and the Agency dispute whether to apply the three factors articulated in *Kimberly F.* (See *In re J.C., supra*, 226 Cal.App.4th at p. 527 [declining to apply the *Kimberly F.* factors].) The court in *Kimberly F.* expressly stated its factors were "not meant to be exhaustive," and we accept them as such. (See *Kimberly F., supra*, 56 Cal.App.4th at p. 532.) The *Kimberly F.* factors are informative in conjunction with factors identified by other courts, including the Supreme Court's admonition that courts consider the minor's primary interest in permanency and stability at this stage of dependency proceedings. (*Stephanie M., supra*, 7 Cal.4th at p. 317; see *Jasmon O., supra*, 8 Cal.4th at p. 419.) M.L. claims the focus on permanency and stability means that a court could never grant a section 388 petition after extended foster care. We disagree. This focus must be balanced against the factual showing made by the parent on other factors bearing on the child's best interests. This task is for the juvenile court in the first instance, however. On appeal, we cannot fault the juvenile court for placing substantial weight on the factors of permanency and stability. (See *Jasmon O., supra*, 8 Cal.4th at p. 419; see also *Aaliyah R., supra*, 136 Cal.App.4th at p. 448 ["The juvenile court quite properly looked to [the minor's] need for permanency and stability in denying mother's petition for modification of its prior orders."].) These factors were among the relevant circumstances the juvenile court was entitled to consider and weigh for itself in deciding whether M.L.'s requested relief was in the minor's best interests.

Mother's petition states that she has bonded with [the minor], and that [the minor] is happy to see her and reaches for her on their visits, such visits, in total, add up to only a tiny fraction of the time [the minor] has spent with the foster parents. On this record, no reasonable trier of fact could conclude that the bond, if any, [the minor] feels toward Mother (as opposed to the bond that *Mother* feels toward [the minor]) is that of a child for a parent." (*Ibid.*; see *Kimberly F., supra*, 56 Cal.App.4th at p. 532 [identifying as another factor in the best interests analysis the relative bonds between the minor and the parent and the minor and his or her caretakers].) While we can envision circumstances that would justify granting a petition under section 388, even for a parent who had never had custody of the dependent minor, M.L. has not shown the juvenile court abused its discretion in denying her petition under the circumstances here.

M.L. faults the juvenile court for referencing the Legislature's six and 12 month guidelines for reunification services when children, like D.L., are detained under the age of three. M.L. has shown no error in the court's comments, which properly noted the Legislature's statutory guidelines governing for length of time a parent should be given to reunify. M.L. also faults the social worker for focusing on D.L.'s adoption, rather than the services M.L. continued to complete. M.L.'s reunification services had been terminated, however, so the social worker was properly focused on permanence for D.L. "Once family reunification services are terminated, the welfare agency's focus shifts from monitoring the parents' progress toward reunification to determining the appropriate placement plan for the child." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 305.)

15

DISPOSITION

The order is affirmed.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.